UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NICOLE MUGENI MUSANA,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

Case No. C26-3578-MLP

ORDER

Petitioner Nicole Mugeni Musana is currently detained by U.S. Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. She filed, through counsel, this 28 U.S.C. § 2241 habeas petition, asserting an immigration judge's ("IJ") September 14, 2026 bond denial was an abuse of discretion and thus a violation of her due process rights. (*See* dkt. # 1.) Petitioner seeks release from custody. (*Id.* at 20-21.) Petitioner's counsel filed a declaration in support of the petition. (Currie Decl. (dkt. # 4).) Respondents filed a return (dkt. # 7), together with declarations from ICE Deportation Officer Freite Subero Arias (Subero Arias Decl. (dkt. # 8)) and their counsel, Peter H. Clark (Clark Decl. (dkt. # 9)). Petitioner filed a traverse in reply. (Dkt. # 11.)

Having reviewed the parties' submissions and the governing law, the Court GRANTS Petitioner's petition for writ of habeas corpus (dkt. # 1).[1]

## I. BACKGROUND

Petitioner, a citizen of Rwanda born in the Democratic Republic of the Congo, last entered the United States on August 20, 2020, on a B-2 visa valid until February 19, 2021. (Dkt. # 1 at 3; Clark Decl., Ex. 4 at 3.) In December 2020, Petitioner filed a Form I-589 application for asylum and withholding of removal. (Dkt. # 1 at 3; Clark Decl., Ex. 4 at 4.) The application remains pending.

Petitioner lives in Houston, Texas, and has been employed at a childcare center since May 2023. (*See* Currie Decl., ¶ 3, Ex. B (dkt. # 5) at 12, 47-49.)

On August 22, 2026, Petitioner flew from Houston to Seattle, openly under her own name, to visit her brother and sister-in-law and their newborn baby. (Dkt. # 1 at 3.) The ICE Office of Enforcement and Removal Operations ("ERO") learned that Petitioner would be aboard a flight arriving in Seattle that evening and initiated a targeted enforcement operation. (Clark Decl., Ex. 4 at 3.) ICE records state that an administrative warrant was issued, although it is not in the record before the Court. (*Id.*) Petitioner was arrested as she deplaned and was transferred to the NWIPC. (*Id.* at 3-4.) On August 23, 2026, a Notice to Appear was issued, placing Petitioner in removal proceedings and charging her with removability for overstaying her visa. (*Id.*, Ex. 5 at 2.)

On September 3, 2026, Petitioner's counsel submitted a motion for bond redetermination. (Currie Decl., Ex. B.) In the motion, Petitioner argued that she was not a flight risk or danger based on six years of continuous residence in the United States; steady work and a fixed address

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

in Houston; no criminal record or immigration violations; a lawful permanent resident brother and sponsor with a fixed address in Seattle, Washington; and other close family ties, including two United States citizen brothers who live in Tennessee, her sister-in-law and niece in Seattle, and two adult daughters on F-1 visas. (*Id.* at 11-13, 50, 54.) In addition, her asylum claim offered a path to lawful permanent resident status for her and her daughters, providing a strong incentive to appear for her proceedings. (*Id.* at 11-12.) Two of her siblings had been granted refugee status or asylum based on the same ethnic persecution alleged in her asylum application. (*Id.* at 7.) Support letters from several family members and Petitioner's employer were provided. (*Id.* at 38-56.)

The bond hearing was scheduled for September 14, 2026, at approximately 10:30 AM. (Currie Decl., ¶ 6.) Petitioner's counsel states in a declaration that she was present and prepared to proceed by approximately 8:15 AM. (*Id.* ¶ 7.) A French interpreter appeared for Petitioner's hearing, but left before Petitioner's case was called at approximately 11:30 AM. (*Id.* ¶¶ 9-11.) After learning interpretation was unavailable, Petitioner's counsel agreed to proceed rather than postpone the hearing. (Dkt. # 11 at 5; *see* Clark Decl., Ex. 1 (hearing recording).)

In an approximately 15-minute hearing, the IJ asked the parties about Petitioner's travel and employment history, asylum application, family members, and release plan. (Clark Decl., Ex. 1.) At the close of the hearing, the IJ found Petitioner was not a danger but was a "flight risk given the underlying nature of her [asylum] claim [and] relative lack of ties to the United States" and denied bond. (*Id.*) On September 15, 2026, the IJ issued an initial written order on a checkbox form, checking a box ordering that the request for change in custody status was denied and a box indicating "Flight Risk." (Currie Decl., Ex. A at 6.) The form order contains no additional findings or analysis. Petitioner reserved appeal to the Board of Immigration Appeals

("BIA"), which was due October 14, 2026. (*Id.* at 7.) The record does not reflect whether a timely appeal was filed.

Petitioner was scheduled for a hearing with the Immigration Court on October 14, 2026. (Subero Arias Decl., ¶ 17.) The record does not reveal the outcome of that hearing.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner contends the bond determination was "arbitrary, conclusory, reflective of an abuse of discretion, and devoid of any reasoned or individualized analysis and unsupported by the record." (Dkt. # 1 at 1.) Respondents maintain the petition should be denied for failure to exhaust administrative remedies and fails on the merits.[2] (Dkt. # 7 at 3.)

### A. Exhaustion of Administrative Remedies

In cases brought under § 2241, exhaustion is a prudential, rather than jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may require prudential exhaustion where: (1) agency expertise is necessary to build a proper record and reach

[2] The Court relies on the arguments and findings made by the IJ during the hearing and denies Respondents' request to stay these proceedings so that the IJ may make post-hoc written findings several weeks after the bond determination. *See Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) ("[W]e agree that due process requires a contemporaneous record of [bond] hearings and that the memorandum decision presently provided is insufficient.").

a proper decision; (2) waiving the requirement would encourage bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes, obviating the need for judicial intervention. *Id*. (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

Even where these factors weigh in favor of prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

Assuming without deciding that the *Puga* factors weigh in favor of exhaustion, this Court finds that waiver of the exhaustion requirement is appropriate here, under *Laing*, as administrative remedies are "inadequate or not efficacious" and "irreparable injury would result." *Laing*, 370 F.3d at 1000. Recent government data reflects an average processing time of 204 days for BIA bond appeals. *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d, 1297, 1307 (W.D. Wash. 2025), *aff'd sub nom*. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). Petitioner has been detained since August 2026 and requiring her to wait for BIA review "would inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process." *Zavala Sandoval v. Hernandez*, 2026 WL 1661379, at *3 (W.D. Wash. June 9, 2026) (citations omitted); *Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026). Moreover, "[u]nder the factors outlined

in *Puga*, prudential exhaustion is not necessary where the petitioner raises a constitutional challenge to the adequacy of a bond hearing." *Scott v. Hernandez,* 2026 WL 3034232, at *3 (W.D. Wash. Oct. 9, 2026) (cleaned up). Accordingly, the Court will consider the merits of the petition.

**B. Bond Hearing**

Habeas courts review an IJ's bond determination for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779-80 (9th Cir. 2024). Under an abuse of discretion standard, the court is not permitted to reweigh evidence; it can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). A petitioner may establish an abuse of discretion by showing that "the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion" or that it is "clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts." *Roberts v. Scott*, 2026 WL 2071146, at *3 (W.D. Wash. July 17, 2026).

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under *In Re Guerra*, 24 I. & N. Dec. 37 (BIA 2006): (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from

authorities; and (9) the noncitizen's manner of entry to the United States. *Martinez*, 124 F.4th at 783 (citing *Guerra*, 24 I. & N. Dec. at 40).

The IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Guerra*, 24 I. & N. Dec. at 40. To sustain a permissible flight risk finding, any factor considered by an IJ must rationally bear on a noncitizen's likelihood to appear for immigration proceedings. *Matter of Patel*, 15 I. & N. Dec. 666, 667 (BIA 1976) (reversing flight risk finding where IJ relied on factors bearing "little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding").

Here, Petitioner contends nearly all *Guerra* factors favor release. (Dkt. # 1 at 9-10.) She has resided in the United States for six years and has a fixed residence in Houston, as well as her brother's offer to provide a fixed residence in Seattle. Her family ties to the United States include brothers, two of whom are U.S. citizens and one who is a lawful permanent resident, and two adult daughters lawfully present. She has steady employment that she has maintained for over three years. She has no history of flight, non-appearance, or criminal activity, and she was inspected and entered the United States legally. Respondents do not address any of Petitioner's arguments, but contend the IJ "correctly weighed both negative and positive factors and came to a reasoned conclusion." (Dkt. # 7 at 11.)

The entirety of the IJ's oral decision stated that Petitioner was a flight risk due to the underlying nature of her asylum claim and her "relative lack" of ties to the United States. Regarding the first ground, while the BIA has identified that an IJ may "consider the likelihood that relief from removal will be granted in determining whether [a noncitizen] warrants a bond," *see Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020), the mere fact of a removal order

or the lack of other potential forms of relief do not suffice to establish flight risk. *See, e.g.*, *Segura Serrano v. Scott*, 2026 WL 1674357, at *7 (W.D. Wash. May 26, 2026); *Tavurov v. Noem*, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) (citation omitted).

Here, there is no removal order and Petitioner's asylum and withholding of removal claims remain pending. During the hearing, the IJ noted that Petitioner had flown to the United States for short trips in 2017 and 2018, questioning whether it undercut her claims of fear of returning to Rwanda, and stated that Petitioner's case would be different from her siblings' successful asylum and refugee claims because she had only alleged pressure to join the ruling party. (Clark Decl., Ex. 1.) Both parties indicated that the situation in Rwanda had changed over the years, with Petitioner's counsel arguing that the danger had increased since the short trips in 2017 and 2018 and the government suggesting that the circumstances under which the older brother obtained refugee status might have changed; but the IJ did not explain what changes undergirded his decision. The IJ voiced understandable reluctance to delve too deeply into the asylum application as it would require clearing the courtroom, but failed to explain even in broad strokes how the merits of Petitioner's asylum claim established flight risk. "While it might be rational to draw the conclusion that a noncitizen who faces inevitable removal may be less likely to appear at future removal hearings, the IJ failed to make that connection to Petitioner's individual circumstances or otherwise discuss whether the 'relative strengths or weaknesses of Petitioner's claims for relief outweighed' the significant evidence demonstrating Petitioner's fixed and stable connections to [her] family and community." *Montiel Moreno v. Hernandez*, 2026 WL 1906522, at *9 (W.D. Wash. June 18, 2026) (quoting *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026)).

Regarding the second ground for the denial, the IJ provided no explanation for the finding that Petitioner had insufficient ties to the United States. In her submission to the IJ and her petition before this Court, Petitioner pointed to several siblings and adult children who reside in the United States, most with permanent status, as well as her steady employment. (Dkt. # 1 at 9; Currie Decl., Ex. B at 5-6, 11; *see* Clark Decl., Ex. 1.) The IJ's oral ruling did not shed any light on why he considered this insufficient or how many more relatives it would have taken to constitute adequate ties to the United States.

Regarding other factors under *Guerra*, the IJ acknowledged reviewing Petitioner's submission, but did not offer any reason why factors such as her employment history, complete absence of criminal history, and numerous relatives present in the United States were outweighed by unarticulated concerns regarding her asylum application and ties to the United States. "Simply acknowledging contrary evidence is not enough; the IJ must meaningfully engage with it." *Zavala Sandoval*, 2026 WL 1661379, at *5.

In sum, the cited reasons for denying bond do not stand on their own as a basis to deny bond and it does not appear the IJ considered the significant amount of evidence in Petitioner's favor. Because the IJ's reasoning does not evince a "rational relationship between the governing legal standards and the facts and evidence" in the case, *Roberts*, 2026 WL 2071146, at *5, the IJ's decision was an abuse of discretion and Petitioner's continued detention violates due process.

Federal courts have a "fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Courts have found no basis for similarly situated petitioners to continue to be detained. *See Valdez-Reyes v. Scott*, 2026 WL 1361635, at *4 (W.D. Wash. May 15, 2026) (ordering immediate release); *Soriano*, 830 F. Supp. 3d at 1081-

82 (same); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (same); *W.T.M. v. Bondi*, 2026 WL 262583, at *5 (W.D. Wash. Jan. 30, 2026) (same). The Court finds the same here and thus the appropriate remedy is for Petitioner's immediate release with reasonable conditions of supervision.

## IV. CONCLUSION

Based on the foregoing, the Court hereby ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED.

(2) Respondents shall RELEASE Petitioner from custody within **twenty-four (24) hours** of the issuance of this Order with reasonable conditions of supervision.

(3) Respondents shall file a notice with the Court confirming Petitioner's release within **forty-eight (48) hours**.

The Court will entertain any post-judgment motion for attorney's fees. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The Court encourages the parties to meet and confer prior to the filing of any such motion.

Dated this 28th day of October, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge